Good morning. May it please the court, Kevin Berry, counsel for Devon Drive, Lineville, North Charlotte Road, Pottstown, Main Street, Peckville, Rhodes Avenue, Newtown Square, John Say and George Spader. I'd like to reserve three minutes for rebuttal. I'm happy to address the raised judicata and confessions of judgment issue if the court has questions, but I really want to focus my attention on the standing issue. The district court in Devon 3 dismissed the claims by George Spader and Devon Drive, Lionville, based on a finding there were no allegations of reliance in the second amended complaint. Now, help us, please, please do them separately, right? Mr. Spader and Lionville, because I take them to be in somewhat different positions. Lionville, well, they don't seem situated precisely the same to me, but why don't you explain to me if you agree or disagree with that and then how each of them separately pled or alleged RICO stamming. Well, Mr. Spader was a principal in Lionville and number one and number two, although the allegations in the complaint as it relates to reliance by Mr. Spader is different than Lionville. The fact of the matter is that the conclusion of the court in Devon Drive 3 that there were no allegations of reliance is actually wrong. Could you please direct us to the specific allegations of reliance? Sure. And the in the Devon drive. Devon Drive to. On page this page. Page. Give us the appendix page. The appendix. Well, I don't have the reference to the appendix page, but I do have a reference in the opinions. OK. In the age to age five. We cite these in our brief, but page six and page 10. These are in the opinion, right? Yes, there are. I'm kind of interested to know, since we're looking at your complaint, where in the complaint, what are the allegations in the complaint that you point to and say, that's an allegation that sufficiently alleges a reliance that that shows we were we were taken in by a scheme to defraud. That the mail or wire we used to assist it. And right now we're focusing on Spader and Lionville. Right. They're the only ones as to whom the standing issue is coming up, because, as you've, I think, rightly pointed out, the rest of the kind of stuff is what it is. Help us with this. Lionville and Spader standing. Well, as it relates to Mr. Spader, there were specific allegations relating to the pledging of the roads property to. As collateral for the Pottstown loan in specifically, Mr. The bank president promised Mr. Spader that he would not record the mortgage that was going to be issued for that. He wasn't going to report or enforce the mortgage that was going to be issued on the roads property. And Mr. In reliance on that, when we alleged reliance on that, Mr. Spader went ahead and signed the mortgage. OK, and that's the that's the roads property. That's the roads property. Yes. Your theory is that Mr. Mr. Spade, anything that happened to any of the properties that Mr. Spader had an interest in is by that fact an entry to Mr. Spader. Yes. But where is this preserved? I mean, there are some allegations about Earl lying to Spader about the state of the partnership finances. But where is this preserved that there was fraud and reliance? Yes. In Devon Drive to. Judge Goldberg states at the very end of the opinion that he's not going to address the issue of standing. Even though he cites in the Devon Drive to. Five instances where there's reliance, he says in the concluding paragraph that he's not going to decide that. That he's dismissing a res judicata and wants me to replete and declutter the complaint. We addressed the standing and reliance issue in the briefing on Devon Drive to Devon Drive three. Because it hadn't been addressed and it wasn't argued. We incorporated by reference that our briefing in Devon Drive three, the briefing in Devon Drive to on the issues that hadn't been addressed. But I looked at that briefing below. And so you not only have to show it's in the complaint, but when you were when you were when you were briefing this for Devon Drive to and then three. You know, your opponents say that you haven't really preserved any theory of causation, that you kind of switched the theory that you were pleading. Below is a theory of omission. And now you have a different one. But what theory have you consistently preserved here? Well, I want to take a step back and make a distinction between causation and reliance. They're not the same thing. And I would suggest that the by reason of the phrase by reason of this throughout the complaint hundreds of times. And that the assertions of causation are that the scheme that we describe in the in the complaint did, in fact, cause the losses that we alleged occurred in the complaint. The as it relates to reliance, reliance can somehow be. Can somehow be used in proving causation. But reliance itself is not the same thing as causation. Number one. And number two, the bridge case says that we don't have to allege reliance because it's not an element of Rico. Well, it says you don't have to allege first party reliance, but it doesn't say you don't have to allege any reliance, does it? Well, actually, it does say that the holding is that reliance. It doesn't say first party reliance. It says that reliance is not an element of Rico. The cert. The question upon which cert was granted and which they address in their opening paragraph is first party reliance. Is that not to be understood? The statements about reliance in the context of what they they they had shirt on and what they state at the outset they're discussing. Well, my point being that, yes, your Honor, to answer the question, but the holding and bridge relates to reliance and doesn't use the phrase first party reliance. But even so, that court and this court has held in cases of concealment when there's a duty to disclose. It can't possibly be reliance there because there's no representation whatsoever. All right. Those are omission cases. That was a theory you used below. That's not the theory that you're pressing on appeal. Actually, it's in our complaint. The complaint is both affirmative, male fraud and wire fraud, but it also is nondisclosure to the federal regulators. That's not the theory you're pressing on appeal. Well, the theory you're pressing on appeal now is nondisclosure to federal regulators. That's preserved. But let's assume we disagree with you and we think that bridge is about first party reliance and reliance in an ordinary case is how you prove causation. And omission cases are separate. So set aside the legal issue, right? If that's how we read the law, is there anything preserved in this case apart from the FDIC regulators being deceived? Because that's all I see, and that one's borderline. Well, as it relates to third party reliance, I would concede the point. It relates to the regulators. They're the ones that, and I disagree. I mean, we cite the consent decree from the regulators, which, frankly, that consent degree was in response to review of these particular loans so that the review of the regulators and the conduct of the scheme was designed to avoid the scrutiny of the regulators. You have FDIC third party reliance causation theory. Yes. You're saying it's preserved, and we can argue about that. But that, I don't see any other theory that's preserved on appeal here. Should we be focusing on that one? Well, in the, it's not in our appendix because of the rules, it's not required to be, but looking at document 20-1 ECF. I'm talking about your blue brief, your opening brief here. Right. Is there any other reliance or causal theory preserved? Your adversaries, they've focused on this. They're entitled not to shoot at a moving target. You don't get to smuggle something in their reply brief. Is there anything else that you contend is preserved apart from this FDIC theory? As it relates to third party reliance, no. Okay. First party reliance. Anything else? Any other, right. Let's, we'll go with you here for a second and say, take the qualifier off. Is there anything about reliance other than the FDIC theory that's preserved in the appellate briefing? Well, we do, we do argue first party reliance in the representations made, well, as it relates to Spader, involved Rhodes Avenue, as it relates to Shea, although Shea was dismissed of race judicata grounds. We made allegations of first party reliance. Okay, so you have some Shea and Rhodes issues. If you get past the race judicata, which we bracketed, but it's fine for you to say that here, that they relied on Park Bank's misrepresentations when they executed their loans? Yes. That's what we are. Okay. So that might work for Shea and Rhodes if there's no race judicata, but you can't run causation through Shea and Rhodes to establish causation for Spader or Lyonville or Pottstown or Peckville, right? That's just for those two. No, because the representations were made to Mr. Spader. The representations regarding the mortgage involving Rhodes was made to Mr. Spader. So, again, the assertion is anything that happened to any entity happened to Spader. That's what it comes down to? Well, that's certainly true because he was a principal and managing partner. Well, he was at least a majority principal in all the entities and was at the time of the representations. I looked and I saw allegations that Shea and Rhodes were hurt by this. I didn't see an allegation that Spader was directly injured. I mean, you have this proximate causation issue about Spader as partner to Rhodes, but I didn't really see that developed in the briefing. But you can tell me if there's somewhere where you say it's preserved in your briefing. We'll look at it. As I stand here now, where in the brief we argue, I don't know. But as it relates to the complaint, Mr. Spader was not only a principal but guaranteed all the debt in all the entities. So he was individually injured when the scheme sought to implode each of the partnerships. All right. Now let's move on. We have this issue of corporate separatist, corporate forum, and you can't pierce that veil. But let's move past that. Let's move past Spader and talk about Lyonville, all right? What is the argument associated with Lyonville that is preserved and has to deal with causation and reliance? Well, reliance, you know, it relates solely to the communications with the regulators because it was the victim of the misallocation of funds and poaching of funds. The same FDIC argument. Yes, it is, as it relates to Lyonville. Right. You had in your complaint something about Earls making statements to Spader, but I didn't see that followed up in the appellate brief. You're really going on the FDIC theory. Yes. What's your response to your adversary's objection? The FDIC's theory has too many moving parts, too many links in the chain of causation, that usually we just stop by looking at the direct victim here. We don't go down to all the investors or business owners or suppliers who are indirectly affected by a fraud. Because the fraudulent communications to the FDIC related to these specific loans. The FDIC came in to look at lending practices at the bank, and it was a result of their review of the lending practices relating to these specific loans that they issued a dissent decree in 2012. But then the federal government's the direct victim. They're an intervening actor, and intervening actors break the problem of causation, and how do we assess the damages? I thought cases like Anza and Herme didn't allow that kind of indirect causation. With all due respect, the ruling of the court below was on standing, not on causation, number one. Number two, we've pled causation more than adequately, and to me that's an issue of fact that should be decided either at summary judgment or trial, not an issue when it wasn't considered by the court, nor was it argued below by either party. It wasn't an issue that was addressed, the causation issue between the FDIC and these entities. But it is clear that one of the purposes of miscommunication to the FDIC under these circumstances was precisely so that these entities would get injured. That's what the plan was about. Let me ask you, if I can impose on my colleagues, because we're past your time here, but you took the position in front of the district court, and you have it in an oblique way here as well, that everything that has to do with Spader has to be talked about. In other words, when the judge was making the Rule 41B analysis and dismissing the remainder of the complaint, he said, I asked very specifically, give me your pared down, as you put it, I think, whole brief that just has the allegations that are pertinent to Spader and the allegations that are pertinent to Lyonville. And I not only didn't get that, I got the virtually verbatim complaint I had dismissed and more. And that just is, you know, he didn't say that's intolerable. They didn't use that word, but he said it's made it impossible for me to deal with this. Is the position you're taking with us still that it was impossible for you to do anything except deliver back to the court the same complaint with additional allegations? Yes, Your Honor, and let me explain why. Please do. There was a point in time for about 15 months when Mr. Spader was under court order not to be involved in the partnership. That order was obtained through fraud. Mr. Earle went into a judge in Delaware County and told him that Mr. Spader was a disgruntled former employee and he's making trouble and he should get him out of the partnerships, never disclosing he was a 50% partner in all of the partnerships. During that 15-month period, Park Bank and Mr. Earle went into Delaware County to that same judge to try and get approval of a settlement, a global settlement, where, among other things, there was going to be cross-collateralization of all the partnerships. We're familiar with all this. This is in your briefing. We've read it. We understand all that. I'm trying to get to, and I guess you're answering my question, your view of this case is it's impossible to talk about Mr. Spader without talking about everything. It just cannot be done. That's correct, Your Honor, because his interest and the activities all affected everything he had. Kind of your proximate causation theory, too, that it's all tied together. Judge Goldberg asked you to try to separate it out, and we've asked you for proximate causation purposes to try to separate it out, and you're not taking the bait. As it relates to the partnerships, that is indeed impossible, because unless you take a step back and look at everything that happened here, at all the partnerships and at all the communications between the bank officers and the officers of the entities and Mr. Spader and Mr. Earle and what they did and how they went about this path to deprive him of those entities, to put them all and to grab all of those assets and to misdirect funds and to make false promises in order to get to their goal, it is all interrelated. Had you not the opportunity and indeed the obligation to make an effort to pare that complaint down, having preserved your position that this is the complaint we want to stand on, we're being forced into a complaint we think is not fully adequate, having preserved that position, was that your obligation then to comply with the court's order to make some kind of a pass at getting a narrowed complaint? I would answer that by only saying I felt obligated to stick with the complaint I had. I was not comfortable paring it down and running on a complaint that I might get by on, but that I'd have to litigate and try and it would eliminate a lot of what I needed to consider myself with. I would rather have that complaint reviewed by this court. Okay. All right. Thank you, Mr. Berry. We'll have you back on rebuttal. Mr. Braverman, we'll have your argument on behalf of the amulet. Good morning, Your Honors. My name is David Braverman, and I'm having feedback. My name is David Braverman. It is my privilege to represent Park Bank Corp., Park Bank, Vito Pantaleon, and Ralph Gallo, the latter two being officers and directors of Park. I would like to start this argument with the court's permission on the adverse domination and fraudulent concealment issue, because I think once I disclose to the court the underlying basis of that argument, it runs through the entire complaint and exposes fallacies throughout the entire complaint. First, neither the district court nor any of the parties were able to find any case where the adverse domination theory or the fraudulent concealment theory applied to escape the preclusive effects of res judicata. Normally applied to toll statutes of limitations. That's the way we've all seen it. What's wrong with the theory that they're advancing, even if it hasn't come up before, which is, I take their assertion to be we can hardly be blamed for not taking steps to preserve certain rights when the entities were under the control of one of the co-conspirators. That's fundamentally unfair. You can't tag us with a res judicata consequence that stems from our failing to do something when we, the injured people, couldn't have done anything because we weren't in control of the entities. Why is that not a thoughtful and an appropriate application of the principles behind the doctrine of adverse domination? I actually do not disagree with you, Judge Joy. However, you need the right case. This is the totally wrong case for that theory to apply, and here's why. First of all, counsel on the other side argue that Mr. Spader, assuming that he is the be all and end all to the group of plaintiffs, was, in their words, exiled from the partnerships, was ordered not to have anything to do with the partnerships, and it was during the succeeding 13 months that all this terrible stuff happened. Well, that's inaccurate, because if your honors go to the appendix, Joint Appendix, page 708, you'll see that the August 16, 2012 order was actually a follow-up, by consent, to a stipulated order. Mr. Spader and the party's plaintiff in the trial below stipulated to the entry of an order appointing a neutral to run all of the entities because the two of them, Earle and Spader, were looting them and destroying the partnerships, which is why they ultimately went into default with Park Bank. Secondly, far from exiling Mr. Spader or any of the party's plaintiff, the court required them to enter into an operating agreement, and the operating agreement, aside from... Stop for just a second. Yes, sir. Let's think about where we are in the procedural posture of this case. Yes, sir. There was a 12B6 and an alternative of 41B. Yes, sir. Right? Yes, sir. That's what we're here reviewing. Yes, sir. Are we obligated in that circumstance to be taking the allegations of the complaint as true? Yes, unless you're obligated to take the well-pleaded allegations of the complaint as true, and the record in this case pursuant to the judicial notice that the court took, including these underlying documents, court records, court orders, specifically provided the party's plaintiff not only with continuing going forward access to all financial information and documentation, but it provided, and this is at JA1326, that they gather all of the documents and submit them to both sides. Well, this is an important point, Mr. Braverman, because, in fact, as I understand your learned colleague's argument, it is that the court, and you're asking us to, take judicial notice of the truth of things said in documents, which is not the typical function of judicial notice. Judicial notice of another court's actions is usually to say, hey, I can take judicial notice that in the Delaware County Court of Common Pleas, you pled the following things and judgment was entered against you. Is it ordinary to say, and I'm also going to take judicial notice and accept as true everything that was said in any document that might have been submitted in connection with the Delaware County Court of Common Pleas case? I've always had difficulty, Your Honor, with taking judicial notice, but not necessarily accepting the truth of what is said. And I admit, there's a tension there, and I'm just not sure I completely can comprehend it. But what I do know is that the record below, of which the district court took specific judicial notice, contradicts everything that they have said about adverse domination. It contradicts their arguments that for 13 months they were in exile. If they've pled it, and if they've pled it in their complaint, I think Your Honors are free to look at the underlying record of which the lower court took judicial notice to show that it's a prevarication. It didn't exist. Let me move past this. Yes, sir. All right. I'm not even, you know, Pottstown and Peckville. Well, first of all, Lyonville and Spader aren't touched by race judicata at all. You have to get to the RICO standing for race issues.  And Pottstown and Peckville, their earlier suits were not about fraud. I'm sorry, not about what, Your Honor? The earlier suits were not the same as the current suits. The fraud claims here are not being, were not rejected on the merits there. So in the nature of unliquidated counterclaims that they couldn't have, they could not have pleaded this earlier, and so Pottstown and Peckville would seem not to suffer from race judicata. I mean, I think Shea's in a different, you know, the fraud was raised in the Shea suit, but, sorry, in the Rhodes suit. But Pottstown and Peckville, they couldn't have reopened on that basis. So why don't, why is race judicata proper? I respectfully disagree. I think race judicata is entirely proper, because if you look at the allegations of the Peckville complaint, I'm sorry, of the Peckville petition to open or strike, and the defenses that they raised in the state court proceedings, you'll see that Park Bank, they allege, Park Bank misapplied loan proceeds. Same as here. It goes to the amount of the obligation and whether or not there is a default. They misapplied this and that, but they don't allege fraud in their motion to reopen, unlike Rhodes. I disagree, Your Honor. They allege improper loan administration and fraud, paragraph two of the underlying complaint. They failed to monitor the construction loan proceeds. Same as here. They compounded the mismanagement by misapplying grants received for one partnership and used it for another, paragraph 18. Same as here. So if Your Honors look at paragraphs 1, 2, 17, and 18, and 19 of the Peckville suit, under the Peckville petition to open or strike, you will find the virtually identical allegations. And certainly they bear the same essential similarity to give rise to the race judicata effect. Paragraph 19, Your Honor. But these misapplying, misappropriating, misleading claims are like the claims in cases like Harrison, where Pennsylvania state courts have said that's not enough to reopen a confessed judgment. Misappropriation, improper sale. So how is this different? They're not unliquidated counterclaims. They were raised as defenses. Those defenses necessarily involve everything that's being alleged in the RICO complaint in federal court. Paragraph 47 and 48, they failed to properly apply the Shea loan proceeds to Peckville. Paragraph 49 and 50, they used the monies that they collected either from the repayments or from rents for other loans. Let's move on. I do want to hear you respond to your adversary's discussion on RICO standing and on reliance. Sure. Because clearly some of the parties might survive race judicata, some mightn't. But for at least some of them, at least for Spader and Lineville, you have to get to the RICO standing. Right. So let's get into that. And you could start helpfully by addressing whether it's true that anything that happened to any entity effectively happened to Mr. Spader. And so even if the race judicata blocks the LPs in their claims, Mr. Spader is affected and his claim survives. I respectfully disagree with that too, Your Honor. And if you look at the disclosure forms that were attached to the appellant's first brief in this matter, you'll see and it lists all of the alleged partners in these partnerships predating September 30, 2013. While I don't necessarily agree with them, one thing is clear. And Mr. Spader is listed as a limited partner in each and every one. As such, as a limited partner, the law is hornbooked that he doesn't have any independent or separate claims of the partnerships unless there was a particular act or action that was taken towards him. So I do not believe that Mr. Spader stands in any special category. When you say that's hornbooked law, I take his argument to be, and Mr. Berry will correct me if I'm wrong, that I was injured in my property through my limited partnership interest because of the fraud that the enterprise undertook. So it doesn't matter that I wasn't in control or that I wasn't the person directly defrauded. It's enough for RICO standing purposes that they committed a fraud against the entity in which I was a substantial owner and I'm a victim. Where's the problem with that? Well, it's like a shareholder in IBM trying to collect for a breach of contract or for a tort that was done to IBM. He's a shareholder. He stands in the shoes of the corporation, not individually. And Mr. Spader, if he has any claims, they would be derivative of the limited partnerships. But if there is a direct fraud to Mr. Spader that injures him in something other than his interest in the partnership, that might be something that the court would look at. But I think your assertion is that he hasn't put anything like that. He has not. Okay. But move to Lionville then because we're running low on time here. What's your argument against RICO standing for Lionville? Under Bridge, the Supreme Court made it very clear that first-party reliance was not required. It didn't address the issue of third-party reliance. Subsequent cases in this district, including Lynch by Judge Goldberg, indicate that third-party reliance in some form is required because otherwise we'd be persuaded by that. Because where the statute says you must be injured in your business or property by reason of a violation of the statute, you first need to look at the predicate acts. And one thing I think is important is that the allegations of reliance that they have made here, first-party and third-party, have nothing to do with mail fraud, wire fraud, or any predicate acts. Well, by reason of can be read to be a causation statement, right? Their assertion is we were injured by reason of those predicate acts. In fact, Judge Goldberg just got the law wrong. In fact, Bridge tells us that in describing what mail fraud is, you don't have to have reliance on the mailing. You don't have to have reliance on the wiring. You just have to have some kind of – you just have to be pulled in, affected by the fraud, the scheme to defraud, so that the judge had the wrong standard. Was Judge – I'm sorry, maybe I can ask this more clearly this way. Was Judge Goldberg right or wrong to say there has to have been reliance on the mailing or the wiring? I think he was absolutely correct. If we disagree with him, if we find that he was mistaken, do you still win? Yes, we still win because there is – the only reliance they're asserting now is against the FDIC. In other words, there are mailings and wires that effectuated the alleged scheme that were sent to the regulator. They say that's Bridge. Right. That is Bridge. And they're wrong about that because – Because why? Because, first, they don't identify any specific mailings, any specific wires, any specific reliance. Secondly, their entire argument is undermined by the fact that the FDIC entered a consent order against Park Bank so that they were not misled at all. There was nothing that they were confused about. If you believe their argument – Hold on, Mr. Braverman. I'm sorry. They would say that's a question of fact. This is a 12B6 motion, and whether or not the FDIC was misled is for a jury to decide, not for a district court judge to decide on a motion to dismiss. But they've pled that the FDIC was misled, and they have pled that they were injured by the scheme to defraud. And under the law, that's enough. Yeah, I don't think they've plead that the FDIC was misled. What they say is they did certain things to make it appear as if they were performing loans. Implausible. It doesn't make any sense that they would – As soon as you say that, aren't you taking us into a fact dispute? As soon as you say that's implausible, who would believe that? That's what they plead. That's what you get to say to the jury, not to the district court judge, at 12B6, right? No, this is what they plead, Your Honor. This is all on the face of the complaint. It's 200 paragraphs of fact after fact after fact. We're entitled to parse those facts and analyze them from a legal perspective, not to challenge their truth unless, like in the adverse domination situation, the underlying record completely belies what they've said. But they have not pled any action by the FDIC in reliance upon these alleged predicate acts. In fact, they just sort of nebulously talk about it, and I think it's an after-the-fact argument to be raised because I don't think they raised it below at all. Okay. Thank you very much, Mr. Berry. Thank you, Your Honor. Mr. Berry, we'll have you back on the phone. Thank you. First, I do have the cites to the reliance from the joint appendix. It would be page 61, 66 to 67, 70 to 71, 84 to 85. Secondly, as it relates to this concept that Mr. Spader was somehow involved in the partnerships at a time when he was not allowed to participate in them, I'm going to read from page 10 of our report. Please don't read. Instead, what would be helpful is if you would answer the point that Mr. Braberman asserted, which is, frankly, it just doesn't make any difference what a limited partner says he did or didn't suffer as an injury. That's all derivative. He doesn't get to stand in the shoes of a corporation, and he doesn't get to make a claim, as you are, that everything that happened to all the limited partnerships is actually an injury to the individual. As it relates to Mr. Spader individually, his interest in a limited partnership is certainly an injury to him, a monetary injury to him as a result of this scheme.  The argument is there's well-established law that says individual interest holders, whether it's a member in a limited partnership or a shareholder in a corporation, does not get to have standing to argue injury to the entity. Those are derivative injuries, and we've got decades of law that tell us those sort of folks don't have standing. Why are they wrong to raise that legal principle when you say everything that happened to all the LPs happened to Spader? And I don't disagree with the legal principle or what they're raising. What I'm saying is that the RICO statute allows Mr. Spader to bring a lawsuit against RICO participants for injury he suffers as a result of this scheme. So your assertion is that RICO standing is more generous than the ordinary standing. Like, he wouldn't be able to make a claim like this in court against the managers or the general partner of the limited partnership. But he is, in your view, RICO's a broader and more generous standing standard. Under the language of the statute, yes, Your Honor. That would be my answer. What's your best authority for that? It would be the statute. I don't have a... What subsection? What phrase? 1864, I believe, is the... 1964. 1964, I believe, is the statute that gives the claim. So I would rely on the statutory language. You can't point me to a subsection or a phrase that makes it broader than ordinary position principles. As I stand here now, no, Your Honor, but I would be pleased to provide supplemental briefing to the court on the issue. As it relates to reis judicata, I believe my opponent is simply wrong in the law. In Pennsylvania, counterclaims are not permitted in confession of judgment actions. But defenses are, right? They are, but they're not the same thing. Riverside, this court in Riverside, described the difference. Defense is a set-off to a claim by the bank, and affirmative relief is not available. Can't there be... Aren't there... There are certain counterclaims which are not defenses, but aren't there certain counterclaims which are also defenses? That's correct, Your Honor, but under Riverside, again, they have to be precisely the same. We have more parties. We have more parties in this claim than we do in those confessions of judgment. I also would comment in the Shea case, even though he did raise a counterclaim in his initial filing, that filing was dismissed of POs on the active complaint that was litigated. There were no counterclaims, and they are permissive. He doesn't have to bring them under Pennsylvania law. So there's no reis judicata as to that either. All right. Well, we have your brief, and you've covered that. Thank you, Mr. Ferry. Thank you, Mr. Braverman. We've got the case under advisement. We'll recess court, and we'll give you a call on the phone, Judge Nygaard. Thank you. Very well. Thank you. Please rise. Court stands in recess until 1 p.m. 1 p.m. 1 p.m.